## JOHN GRANT v. ARCHIBALD GUTHRIE and Another.[1]

October 13, 1911.

Nos. 17,080—(13).[2]

**Construction of grading contract.**

A contract with reference to the compensation allowed a contractor for the removal of materials, in constructing a railway grade, construed, and *held:* The contractor was entitled to the same compensation for removing materials from borrow pits, in building embankments, as was provided for the removal of similar materials in excavating for the grade.

Action in the district court for Ramsey county to recover $63,107.52, balance claimed to be due under a railroad grading subcontract. Plaintiff sought to set aside the final estimate on the ground of fraud on the part of the engineer. The trial referred to in the opinion was the second trial of the action. The defendants, in their answer, set up a counterclaim, alleging that, during the time covered by plaintiff's performance of the contract, they sold and delivered to him, at his request, goods, wares and merchandise and paid out and advanced to him, his servants, agents and subcontractors, all of the reasonable value of $109,663.47, no part of which had been paid, except that plaintiff was entitled to credit on account of the performance of his contract in the sum of $97,646.63 and the additional sum of $2,784.98 for certain property and rentals furnished by plaintiff, making a total of $100,431.61 and that there was due and owing defendants the sum of $9,231.86. The case was tried before Olin B. Lewis, J., and a jury which returned a verdict in favor of plaintiff for $12,604.88. From an order denying defendants' motion for judgment notwithstanding the verdict, and granting their motion for a new trial, they appealed. From an order granting defendants' motion for a new trial, plaintiff appealed. Affirmed on both appeals.

*O'Brien, Young & Stone,* for plaintiff.

*M. L. Countryman,* for defendants.

[1]Reported in 132 N. W. 746.          [2]October, 1911, term calendar.

Lewis, J.

Defendants were the general contractors for the grading of the Billings & Northern Railroad in Montana, and plaintiff was the subcontractor for the grading of ten miles of the line. The contract provided that the work should be constructed and finished to the satisfaction of the chief and assistant engineers of the railroad company, and the chief engineer was made the umpire to decide all matters arising and growing out of the contract.

It was provided that all excavations should be deposited in embankments, where embankments were needed, within one thousand feet, and that the plaintiff should be paid in such cases for the excavation only; that the plaintiff should take all other material required for embankments from such place or places as the defendant or the engineer should direct; and that such material should be measured in embankments, and be paid for only at embankment prices.

With respect to the classification of material, the contract provided as follows:

"All grading shall be done and estimated by the cubic yard, measured in the excavation, except material borrowed for embankment, which shall be measured in embankment, and shall be comprised under heads, viz.: Earth, hardpan, loose rock, and solid rock.

"EARTH. Will include clay, sand, loam, gravel and all hard material that can, in the opinion of the chief engineer, be reasonably plowed, and all earthy matter or earth containing loose stone or boulders intermixed, and all other material that does not come under the classification of hardpan, loose or solid rock.

"HARDPAN. Will include material, not loose or solid rock, that cannot, in the opinion of the chief engineer, be reasonably plowed, on account of its own inherent hardness.

"LOOSE ROCK. Will include all stone and detached rock, found in separate masses, containing not less than one cubic foot, nor more than one-half cubic yard, and all slate or other rock, soft or loose enough to be removed without blasting, although blasting may occasionally be resorted to.

"SOLID ROCK. Will include all rock in place, and boulders measuring one-half cubic yard and upwards, in removing which it is necessary to resort to drilling and blasting."

The prices fixed for excavation and embankment were as follows:

"Earth Excavation. Haul not to exceed 300 feet—per cubic yard, nineteen cents.

"Earth Excavation. Haul from 300 to 1000 feet—per cubic yard, twenty-three cents.

"Embankment. Haul not to exceed 300 feet—per cubic yard, nineteen cents.

"Embankment. Haul from 300 to 1,000 feet—per cubic yard, twenty-three cents.

"Hardpan. Haul not to exceed 1,000 feet—per cubic yard, thirty-five cents.

"Loose Rock. Haul not to exceed 1,000 feet—per cubic yard, forty cents.

"Solid Rock. Haul not to exceed 1,000 feet—per cubic yard, eighty cents.

"Any of the above-named materials hauled more than 1,000 feet . . . . . . . . per cubic yard, per each 100 feet additional, one cent."

Plaintiff's contract was completed, and the chief engineer executed a certificate of its completion, and estimated the earth and material excavated and hauled under the contract to be as follows:

Cubic yards of earth hauled 300 feet or less . . . . . . . . . . . . 95,841
Cubic yards of earth hauled more than 300 feet . . . . . . . . 80,463
Cubic yards of hardpan . . . . . . . . . . . . . . . . . . . . . . . . . . 79,303
Cubic yards of loose rock . . . . . . . . . . . . . . . . . . . . . . . . . 16,950
Cubic yards of solid rock . . . . . . . . . . . . . . . . . . . . . . . . . 8,060

The plaintiff claimed that the engineer fraudulently and arbitrarily underestimated, and wrongly classified the material which he had moved in excavating and in building embankments, and commenced this action to recover the amount which he claimed to be due.

The court submitted the case to the jury, and they returned a special finding as follows:

Earth hauled not to exceed 300 feet ........... 81,121 cubic yards
Earth hauled 300 to 1000 feet ............... 34,465 cubic yards
Hardpan .............................. 96,469 cubic yards
Loose rock ............................ 39,930 cubic yards
Solid rock ............................ 28,183 cubic yards

—and returned a verdict for plaintiff in the sum of $12,604.88.

The defendants then moved in the alternative for an order for judgment notwithstanding the verdict, or for a new trial. The trial court denied the motion for judgment notwithstanding the verdict, but granted a new trial upon the ground that the verdict was not justified by the evidence, and was contrary to law. Defendants appealed from the whole order, and plaintiff appealed from the order granting a new trial.

On the plaintiff's appeal, the errors assigned call for the construction of the contract with respect to material taken from the borrow pits.

The defendants maintained that material removed from the borrow pits was controlled by the prices fixed for the removal of earth. The plaintiff maintained that when he was directed to take material from borrow pits, in order to construct embankments, he was entitled to receive the amount specified for excavating the material, whatever it was—earth, hardpan, loose rock, or solid rock.

The schedule of prices for earth excavation and building embankments, and for the removal of hardpan, loose rock, and solid rock, indicates that the classification was adopted upon the supposition that it would not be necessary to use any other material than earth in the construction of embankments from borrow pits. This is the construction called for by the contract itself, and the record shows that defendants did not at all times insist on the strict limitation they now contend for. Unless the language employed clearly so provides, it cannot be assumed that the parties intended to place in the engineer the arbitrary power to require the contractor to take material from borrow pits, no matter what its character, at the price of removing earth. If the engineer had authority to require the

contractor to remove hardpan from a borrow pit for the purpose of making embankments, at the cost of removing earth, then he had authority to require him to remove loose rock and solid rock at the same figure. Although the contract does not expressly state what shall be paid for the removal of hardpan from borrow pits, it is implied that the same prices shall be paid as for excavating like materials from the grade.

However, this mistake in the construction of the contract does not entitle the plaintiff to a reinstatement of the verdict. While the defendants insist that they were not required to do so, they did in practice allow plaintiff and other contractors pay, upon the classified basis, for materials taken from borrow pits, and the evidence is not sufficiently definite to form a basis for an estimate of the specific amount plaintiff is entitled to recover. It was not clearly shown that the engineer made a wrong classification of the materials taken from the Austrian cut, and the evidence is not convincing that plaintiff removed more materials than allowed him in the estimate; and we are not prepared to say that the trial court was not justified in submitting all of the disputed questions of fact to another jury. For these reasons, neither party is entitled to judgment notwithstanding the verdict.

Affirmed on both appeals.

BUNN, J., took no part.